UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

CERTAIN UNDERWRITERS AT
LLOYD'S, LONDON SUBSCRIBING
POLICY NO. B0621ECOGLXS0016,

        **Plaintiff,**

**v.**                              **Civil Action No.** 2:18-cv-01497

**MID SOUTH CARBON CORPORATION,**

        **Defendant.**

## COMPLAINT FOR DECLARATORY JUDGMENT

This Complaint for Declaratory Judgment is filed against Mid South Carbon Corporation ("Mid South"), by Certain Underwriters at Lloyd's, London Subscribing to Policy No. B0621ECOGLXS0016 ("Underwriters") which issued excess liability insurance to U.S. Well Services, LLC ("U.S. Well").

## The Parties

1.    Plaintiffs Certain Underwriters at Lloyd's, London Subscribing to Policy No. B0621ECOGLXS0016 is comprised solely of Lloyd's Syndicate 4711 ("the Syndicate") (an unincorporated association). Aspen Managing Agency manages the Syndicate and Aspen Underwriting Limited provides 100 per cent of its underwriting capacity. The Managing Agency is authorized and regulated in the UK by the Financial Conduct Authority and the Prudential Regulation Authority. The Managing Agency is incorporated in England, has its principle place of business in England, and is organized under the laws of England and Wales.

2.      Defendant Mid South is a corporation incorporated under the laws of Wyoming and is a citizen and domiciliary with a place of business at 601 6th Ave, Saint Albans, located in Kanawha County, West Virginia 25177.

## Jurisdiction

3.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1332 and 2201 because complete diversity exists between the Plaintiff and Mid South; the amount in controversy exceeds the sum of $75,000 as to each and every subscribing syndicate, exclusive of interest and costs.

## Venue

4.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1) because the Defendant Mid South Carbon Corporation maintains its primary place of business within this District and Division.

## The Controversy in Suit

5.      This action for declaratory judgment arises from a claim or demand for defense and/or indemnity made by Mid South against Underwriters and its insured U.S. Well for coverage and benefits under excess liability policy no. B0621EGSUS000116 (the "Excess Policy"), issued by Lloyd's Syndicate 4711 for the period from March 15, 2016 through September 15, 2017 to the named insured, U.S. Well Services, LLC.

6.      A true and correct copy of said policy, save for the redaction of sensitive, proprietary, and/or confidential premium, rating, and/or commission information, is attached hereto and incorporated herein as Exhibit A, as if copied *in extenso*.

7.      Mid South seeks defense, indemnification, and insurance coverage from Underwriters under the Excess Policy with respect to claim(s) of Darin and Cynthia Osborn, Representatives of

2

the Estate of Hunter D. Osborn (the "Osborns") against Mid South, which are the subject of a lawsuit styled *Darin and Cynthia Osborn v. U.S. Well Services, LLC, et al.*, civil action No. 17-C-31C in the Circuit Court of Tyler County, West Virginia.  The complaint is attached as Exhibit D.

8.     The following statement of facts and circumstances are made solely for the purpose of setting forth the claims and allegations asserted against Mid South which form the basis of its claim or demand to Underwriters and are in no way admitting or otherwise endorsing any of the allegations contained therein:

A.     The Osborns allege that on January 12, 2017, Hunter D. Osborn was employed by U.S. Well at a well site in West Virginia.  U.S. Well contracted to provide services to Antero Resources Appalachian Corporation ("Antero"), an exploration and production company.

B.     On that date, a truck owned by Mid South and operated by a Mid South employee was delivering sand to the well site when the truck backed into Hunter D. Osborn, causing him to sustain fatal injuries.

C.     The Osborns allege the negligence of Mid South and its employee (among others) caused Hunter D. Osborn's death.

D.     The Osborns seek damages resulting from Hunter D. Osborn's death.

### The Excess Policy

9.     Mid South has requested coverage under the Excess Policy for the defense and/or indemnity of Mid South in connection with the claims by the Osborns.

10.     Syndicate 4711 issued the Excess Policy for the period from March 15, 2016 through September 15, 2017.  The Excess Policy provides limits of $5,000,000 per occurrence, excess of

3

4817-9840-2434.v1

$1,000,000 in underlying insurance. Underwriters plead, as if set forth herein, *in extenso*, this written policy of insurance, including all terms, provisions, limitations, exclusions, conditions, warranties, and/or endorsements to said policy, none of which have been or are waived. A true and correct copy of said policy, save for the redaction of sensitive, proprietary, and/or confidential premium, rating, and/or commission information, is attached hereto as Exhibit A.

11.     As a representative, but non-exclusive example of pertinent provisions of the Excess Policy, and without waiver of any other provisions or coverage defenses, Underwriters quote the following provisions from the Excess Policy:

> 1. ADDITIONAL INSURED
>
> The words "Additional Insured", wherever used in this Policy, shall mean any person or entity to whom the "Insured" is obliged by an "Insured Contract" entered into before any relevant "Occurrence" and/or "Claim" to provide insurance such as is afforded by this Policy with respect to "Bodily Injury" or "Property Damage" arising out of operations conducted by the "Insured" but only *to the extent required by any indemnity* given by the "Insured" in said "Insured Contract" to the "Additional Insured".
>
> (emphasis added)
>
>            *     *     *
>
> 15.     INSURED CONTRACT
>
> The words "Insured Contract", wherever used in this Policy, shall mean any written contract entered into by the "Insured" where the "Insured" assumes the tort liability of another party to pay for "Bodily Injury" or "Property Damage" to which this Policy applies to a "Third Party". Tort liability means a liability that would be imposed by law in the absence of any written contract. Written contract includes any written indemnity agreement entered into by the "Insured" with a "Third Party".

## U.S. Well and Antero's Contract

12.     U.S. Well and Antero entered into a "Contract to Provide Dedicated Fracturing Fleet(s)

For Fracturing Services" (the "Antero Contract") dated November 1, 2011, a copy of which is

attached hereto as Exhibit B.  The Antero Contract identifies U.S. Well as "Contractor" and

Antero as "Producer."  It provides in relevant part:

19.2    **CONTRACTOR'S GENERAL INDEMNITY**.  Contractor shall release, protect, defend, indemnify, and hold harmless Producer Group from and against any and all claims arising out of the bodily injury, illness, death, or the damage to or loss of property of any member of Contractor Group in any manner caused by (directly or indirectly), resulting from, incident to, arising out of, or connected in any way to the Services or this Contract, (**REGARDLESS OF CAUSE (AS PROVIDED IN SECTION 19.1**).  The obligations set forth in this Section 19.2 shall include, without limitation, any medical compensation, or other benefits paid by Producer Group for which Producer Group is responsible in connection with employees of Contractor Group and shall apply even if the employee is determined to be the statutory or borrowed employee of Producer or any member of Producer Group.

*     *     *

1.3     *"Contractor Group"* means Contractor, its parents, subsidiaries, and affiliates, and its subcontractors of every tier, and each of their respective owners, officers, directors, members, managers, employees, representatives, agents, invitees, insurers, successors and/or assigns.

*     *     *

1.9     *"Producer Group"* means Producer, its parents, subsidiaries, and affiliates, and Producer's customers and other contractors and subcontractors of every tier, and each of their respective owners, officers, directors, members, managers, employees, representatives, agents, invitees, insurers, successors and/or assigns.

5

## <u>U.S. Well and Mid South's Contract</u>

13.     U.S. Well and Mid South entered into a Master Service Agreement (the "MSA") dated

April 1, 2014, a copy of which is attached hereto as Exhibit C.  The MSA identifies U.S. Well as

"Company" and Mid South as "Contractor".  The MSA provides, in relevant part:

    5.0   **INDEMNITY**.

        5.4    Company shall release, Defend, and Indemnify Contractor Group from and against all Losses arising in connection herewith in favor of any member of Company Group on account of bodily injury, death or damage to property, REGARDLESS OF FAULT.

        *      *      *

    6.0   **INSURANCE**

    At any and all times during the term of this Contract, to support liability and indemnification provisions in this Agreement, but as a separate and independent obligation, Contractor shall maintain…insurance coverage of the kind, in the minimum amounts, and under the terms required by Company on the Required Limits of Insurance attached hereto, marked Exhibit B….

        *      *      *

    11.0  **MISCELLANEOUS**

    11.7   Choice of Law:  THIS AGREEMENT AND THE LEGAL RELATIONSHIP BETWEEN THE PARTIES SHALL BE INTERPRETED AND ENFORCED IN ACCORDANCE THE LAWS OF THE STATE OF TEXAS WITHOUT REGARD TO CONFLICTS-OF-LAW PROVISIONS THAT WOULD REQUIRE THE APPLICATION OF ANY OTHER LAW.

4817-9840-2434.v1

**COUNT I: PLAINTIFF SEEKS A DECLARATION THAT MID SOUTH IS NOT A MEMBER OF PRODUCER GROUP UNDER THE ANTERO CONTRACT AND IS THEREFORE NOT DUE CONTRACTUAL DEFENSE AND INDMENITY NOR ADDITIONAL INSURED COVERAGE UNDER U.S. WELL'S CONTRACT WITH ANTERO.**

14.     Underwriters incorporates by reference all the preceding paragraphs of this Complaint for Declaratory Judgment.

15.     Pursuant to 28 U.S.C. § 2201, Underwriters seeks a declaration of their rights and obligations under the Excess Policy with respect to their duties to Mid South, if any, under the Excess Policy.  The Court's making such a declaration will confer certainty on the parties with respect to their rights and obligations under the Excess Policies, and therefore will serve the interests of justice.  Underwriters' request for declaratory relief includes (but is not limited to) a request for a declaration of the following:

16.     Mid South is not entitled to defense or indemnity from U.S. Well under the Antero Contract.  Mid South is a subcontractor of U.S. Well and therefore a member of U.S. Well's "Contractor Group" which is defined as "Contractor, its parents, subsidiaries, and affiliates, and its subcontractors of every tier."  The Antero Contract provides only that U.S. Well will indemnify Antero and Antero's "Producer Group."  Mid South is a member of Contractor Group, but is not a member of Antero's "Producer Group," which includes "Producer's customers and *other* contractors and subcontractors."  (emphasis added).  Because Mid South is a member of U.S. Well's Contractor Group, it cannot constitute an "other" contractor of Antero's "Producer Group." Therefore, it is not entitled to indemnity under the Antero Contract from U.S. Well.

4817-9840-2434.v1

17.     Because U.S. Well is not obligated to indemnify Mid South under the Antero Contract, the

Excess Policy does not provide coverage to Mid South as an additional insured as a result of that

contractual relationship.

**COUNT II: PLAINTIFF SEEKS A DECLARATION THAT MID SOUTH IS NOT ENTITLED TO ADDITIONAL INSURED COVERAGE UNDER THE U.S. WELL AND MID SOUTH MSA.**

18.     Mid South is not entitled to additional insured status by virtue of the Mid South/ US Well

MSA.   The MSA requires only that Mid South ("Contractor") name as additional insured in its

liability policies U.S. Well ("Company").   There is no similar provision requiring U.S. Well to

name Mid South as an additional insured or otherwise furnish insurance coverage to Mid South.

Mid South is not named as an additional insured under the Excess Policy.

19.     To the extent U.S. Well Services owes contractual defense and indemnity to Mid South for

injuries or death to U.S. Well's personnel, insurance under the Excess Policy for that obligation is

limited "to the extent required by any indemnity."

**COUNT III: PLAINTIFF SEEKS A DECLARATION THAT TEXAS LAW APPLIES TO THE U.S. WELL SERVICES' MSA WITH MID SOUTH AND THAT UNDER TEXAS LAW ANY CONTRACTUAL DEFENSE AND INDEMNITY OWED UNDER THE MSA IS LIMITED TO THE $1,000,000 INSURANCE LIMIT THAT EACH PARTY AGREED TO OBTAIN IN SUPPORT OF THEIR INDEMNITY OBLIGATIONS.**

20.     Per the terms of the MSA it is governed by Texas law (MSA ¶ 11.7).   The Texas Oilfield

Anti-Indemnity Act, Tex. Civ. Prac. & Rec. Code §§ 127.001 et seq. (TOAIA), precludes

enforcement of the contractual indemnity obligation which pertains to services to a well.   The

indemnity agreement contained in the MSA is therefore rendered void by the application of the

TOAIA.   However, the TOAIA, has a safe harbor provision which allows for enforcement of

reciprocal indemnity agreements up to the amount of insurance that each party agreed to obtain in

8

support of its indemnity obligations. U.S. Well's indemnity agreement is therefore limited by the Texas Oilfield Anti-Indemnity Act to the amount of insurance that the parties agreed to obtain in support of their respective indemnity obligations. Pursuant to Exhibit B of the MSA, the amount of insurance that each party agreed to obtain in support of their respective indemnity obligations is $1,000,000.

21. Therefore, any contractual defense and indemnity obligation owed to Mid South by U.S. Well is limited to $1,000,000.

**COUNT IV: UNDERWRITERS SEEKS A DECLARATION THAT ITS EXCESS POLICY ATTACHES ONLY AFTER THE UNDERLYING $1,000,000 PRIMARY POLICY EXHAUSTS AND THEREFORE UNDERWRITERS DO NOT HAVE A DUTY TO RESPOND TO U.S. WELL'S DUTY TO CONTRACTUALLY INDEMNIFY MID SOUTH.**

22. The Excess Policy states:

> **2.    LIMITS OF LIABILITY**
> Underwriters shall only be liable for "Ultimate Net Loss" in excess of:
>
> (a)    the Underlying Insurance(s) set out in Item 2 of the Declarations, or,
>
> (b)    the Self Insured Retention set out in Item 3 of the Declarations,

Item 2 of the Declarations provides as follows:

> Item 2. Underlying Insurance(s):
> (f) "Automobile Liability"
> any one "Occurrence" without aggregate: USD 1,000,000
>
> Item 3: USD 100,000 per occurrence.

23. As can be seen the applicable underlying limits is $1,000,000 in auto liability insurance. Therefore, because U.S. Well can never be liable to indemnify Mid South for liabilities in excess

4817-9840-2434.v1

of the primary policy limits of $1,000,000, the Excess Policy cannot be triggered by U.S. Well's limited duty to defend and indemnify Mid South.

**COUNT V: IF THE COURT FINDS THAT UNDERWRITERS' EXCESS POLICY MUST RESPOND TO THE DEMANDS OF MID SOUTH THEN THERE IS NO COVERAGE FOR GROSS NEGLIGENCE OR WILLFUL MISCONDUCT.**

24.    The MSA between Mid South and U.S. Well excludes indemnity for conduct that rises to the level of Gross Negligence or Willful Misconduct as is alleged by Plaintiffs in the Osborn action.   The MSA sets forth a litany of causes for which Mid South may be indemnified but it expressly excludes any coverage for Gross Negligence or Willful Misconduct.

25.  The Osborns have made a demand seeking punitive damages against Mid South based upon their Gross Negligence and Willful Misconduct and there is no defense or indemnity for such conduct. Therefore, Underwriters requests that the court enter a declaration that the Excess Policy does not provide indemnity for the conduct of Mid South which constitutes gross negligence and willful misconduct.

## RESERVATION OF RIGHTS AND DAMAGES

26.    Underwriters reserves the right, as this case develops, to assert and rely upon additional policy provisions from the above-identified and incorporated policy, as well as any other policies of insurance which may be determined to exist and be applicable.

27.    Underwriters and U.S. Well respectfully requests that it be awarded its reasonable and necessary attorneys' fees and all costs incurred in the prosecution of this declaratory judgment action.

28.    All conditions precedent to filing this lawsuit have occurred.

29.    Underwriters has fulfilled all of its obligations under the Excess Policy to U.S. Well.

4817-9840-2434.v1

WHEREFORE, Underwriters prays that the Court declare the parties' rights and obligations under the Excess Policy with respect to claim(s) arising from Hunter D. Osborn's alleged accident and death and that the Court award reasonable attorneys' fees, costs, and such other and further relief, at law or in equity, to which it may be justly entitled.

Respectfully submitted,


**COUNSEL FOR CERTAIN UNDERWRITERS AT LLOYD'S, LONDON SUBSCRIBING TO POLICY NO. B0621ECOGLXS0016**


/s/Eric J. Hulett
Eric J. Hulett (WVSB #6332)
JACKSON KELLY PLLC
310 W. Burke Street
Martinsburg, WV  25401
Phone: 304-260-4942
Fax: 304-263-7110

4817-9840-2434.v1